UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 11-cv-80988-MIDDLEBROOKS

CORDELL FUNDING, LLLP,

    Plaintiff,

v.

JOEL JENKINS,

    Defendant.
_____/

## ORDER ON REMAND

THIS CAUSE comes before the Court on Plaintiff Cordell Funding, LLLP's ("Cordell Funding") Brief in Support of Diversity Jurisdiction (DE 263) and Defendant Joel Jenkins' ("Jenkins") Memorandum of Law on Subject Matter Jurisdiction (DE 262), both filed on March 8, 2017. Cordell Funding also filed a Motion to Take Judicial Notice on March 8, 2017. (DE 264).

### I. BACKGROUND

On December 7, 2015, the Eleventh Circuit Court of Appeals issued an Order of Limited Remand for the purpose of making a factual determination as to whether diversity jurisdiction exists in this case and to permit further proceedings to address diversity jurisdiction deficiencies, if deemed necessary. (DE 229). The Court ordered a period of limited jurisdictional discovery and additional briefing.[1] (DE 251). On March 8, 2017, the Parties filed their briefing, and supporting evidence.

---

[1] The record may be developed on limited remand to the extent necessary to prove citizenship. *Payroll Mgmt., Inc. v. Lexington Ins. Co.*, 566 F. App'x 796, 803 (11th Cir. 2014).

## II.     LEGAL STANDARD

"When a plaintiff files suit in federal court, she must allege facts that, if true, show federal subject matter jurisdiction over her case exists." *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1268 (11th Cir. 2013) (internal citation omitted). When federal jurisdiction is based upon diversity, the amount in controversy must exceed $75,000, and "no plaintiff [may be] a citizen of the same state as any defendant." *Id.* (internal citation omitted); *see* 28 U.S.C. § 1332. "Where, as here, the plaintiff asserts diversity jurisdiction, [it] has the burden to prove that there is diversity" by a preponderance of the evidence. *King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1171 (11th Cir. 2007); *see also Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1275 (11th Cir. 2000).

"Citizenship is equivalent to domicile for purposes of diversity jurisdiction." *Travaglio*, 735 F.3d at 1269 (internal quotations and citations omitted). "A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002).

The citizenship of an unincorporated entity is the citizenship of its members. *Americold Realty Trust v. Conagra Foods, Inc.*, 557 U.S. ---, 136 S. Ct. 1012, 1015 (2016). Although the Supreme Court has "never expressly defined the term [members]," it has "equated an association's members with its owners or 'the several persons composing such association.'" *Id.* (citing *Carden v. Arkoma Associates*, 494 U.S. 185, 196 (1990)). Accordingly, the party asserting diversity must prove "the citizenships of all the members of the limited liability company and all the partners of the limited partnership." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004).

When legal proceedings involve a traditional trust, which is "not considered a distinct legal entity, but a fiduciary relationship between multiple people," suit is "brought by or against the trustees in their own name," and "[the trustee's] citizenship is all that matters for diversity purposes." *Americold,* 136 S. Ct. at 1016 (internal quotations and citations omitted).

### III. SUBJECT MATTER JURISDICTION

To determine whether diversity jurisdiction exists, the Court must look at the citizenship of the parties as of the date of the filing of the Complaint on August 31, 2011. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.,* 541 U.S. 567, 571 (2004). As explained below, Cordell Funding has established by a preponderance of the evidence that the Parties were completely diverse at the time the Complaint was filed.[2]

#### A. Cordell Funding, LLLP

As a limited liability limited partnership, Cordell Funding is a citizen of any state of which any partner is a citizen. *See Rolling Greens*, 374 F.3d at 1022. From August 2011 to the present, Cordell Funding had one general partner, Robin Rodriguez ("Rodriguez"), and two limited partners, Karen Marino and Bristol Cities Trust. (Rodriguez Affidavit ("R. Aff."), DE 263-1 ¶ 6).

The evidence shows, and the Parties do not dispute, that Karen Marino was a citizen of Virginia at the time the Complaint was filed. (Karen Marino Affidavit ("M. Aff."), DE 263-2 ¶ 5).

The evidence shows, and the Parties do not dispute, that Bristol Cities Trust was a citizen of New Jersey, New York, and the Cook Islands at the time the Complaint was filed. Organized as a traditional trust (R. Aff. ¶ 7), Bristol Cities Trust is a citizen of any state of which its trustees

---

[2] The Parties do not dispute that the amount in controversy exceeds $75,000.

3

are citizens. *See Americold,* 557 U.S. ---, 136 S. Ct. at 1016-17. When the Complaint was filed, Bristol Cities Trust had three trustees: Rajesh Agarwal, Gerald Agranoff, and Southpac Trust International, Inc. (R. Aff. ¶ 7). Rajesh Agarwal was a citizen of New Jersey at the time the Complaint was filed. (Rajesh Agarwal Affidavit, ("R.A. Aff."), DE 263-3 ¶ 3). Gerald Agranoff was a citizen of New York when the Complaint was filed. (Gerald Agranoff ("G.A. Aff."), DE 263-4 ¶ 3). Southpac Trust International, Inc. was organized pursuant to the laws of the Cook Islands and its principal place of business was, and is, the Cook Islands. (Vibha Nagin Vallabh Affidavit ("V. Aff."), DE 263-5 ¶ 4). Accordingly, Southpac Trust International, Inc., a corporation, is a citizen of the Cook Islands. *See* 28 U.S.C. § 1332(c) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business.").

The Parties dispute whether Rodriguez is a citizen of Virginia or Florida. A person's citizenship, the same as his domicile, "is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *McCormick,* 293 F.3d at 1257-58 (internal quotations and citation omitted). "Furthermore, a change of domicile requires a concurrent showing of (1) physical presence at the new location with (2) an intention to remain there indefinitely." *Id.* at 1258 (internal quotations and citation omitted). In determining domicile, courts may look to a variety of objective factors, including where a person resides, works, owns real property, keeps his family and personal belongings, votes, pays taxes, and maintains a driver's license. *See id.*; *Duff v. Beaty,* 804 F. Supp. 332, 335 (N.D. Ga. 1992). No single factor is determinative; courts examine the entire

4

course of a person's conduct in determining domicile. *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954).[3]

In his affidavit, Rodriguez states that he sold his house in Florida on August 1, 2011, before the Complaint was filed. (R. Aff. ¶ 8). At the time the Complaint was filed, he states that he owned a home and maintained his sole office in Virginia, where he resided with the intent to remain indefinitely. (R. Aff. ¶ 9).

Jenkins counters that the Second Amended Complaint, which the Eleventh Circuit permitted Cordell Funding to file to correct jurisdictional pleading defects and which Cordell Funding filed with this Court on remand, alleges Rodriguez is a citizen of Florida.[4] (DE 240). "Normally, factual assertions in pleadings [] are considered to be judicial admissions conclusively binding on the party who made them." *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983); *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985); *Janich Bros. v. Am. Distilling Co.*, 570 F.2d 848, 860 (9th Cir. 1977); *Sanitary Milk Producers v. Bergjans Farm Dairy, Inc.*, 368 F.2d 679, 687 (8th Cir. 1966); *but see Yanouskiy v. Eldorado Logistics Sys., Inc.*, No. 8:06CV674, 2007 WL 3203113, at *2 n.1 (D. Neb. Oct. 29, 2007) (suggesting that plaintiff could offer evidence to contradict its allegation in the complaint as to the citizenship of the decedent). Because I find that Jenkins is not a citizen of Florida, as discussed below, I need not reconcile the conflict between the Second Amended Complaint and Rodriguez's affidavit. I find Rodriguez was a citizen of either Virginia or Florida.

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted the law of the former Fifth Circuit as controlling precedent in this Circuit.

[4] Rodriguez explains the allegation of his citizenship in the Second Amended Complaint as attorney error. (R. Aff. ¶ 8). Jenkins suggests that Cordell Funding acted in bad faith by alleging Rodriguez was a citizen of Florida, and then filing an affidavit, asserting he was a citizen of Virginia.

In conclusion, Cordell Funding was a citizen of Virginia, New Jersey, New York, the Cook Islands, and possibly Florida, at the time the Complaint was filed.

**B. Joel Jenkins**

The Parties dispute whether Jenkins was a citizen of Georgia or Florida. "The burden of proving diversity jurisdiction, when challenged, is upon the plaintiff; but when it is shown . . . that the appellant had a former domicile in [one state], the presumption is that it continues to exist, and the burden shifts to the defendant to prove that it has changed." *Stine*, 213 F.2d at 447; *see also Hendry v. Masonite Corp.*, 455 F.2d 955, 956 (5th Cir. 1972).

In *Hendry*, the defendant moved into an apartment in Illinois, which served as his part-time residence while he worked in Illinois and took steps to relocate his family from Mississippi, including by shopping for a new house in Illinois. *Hendry*, 455 F.2d at 956. Despite the defendant's part-time residence in Illinois and steps to relocate to Illinois, the Court found he was still domiciled in Mississippi because he owned a home in Mississippi, where his family continued to live and his belongings remained, and he voted in Mississippi. *Id.* The Court concluded that the defendant, who had the burden to prove that his domicile had changed, had proved only that "he had an intention to change his domicile *at some future time*," but that he had not "carried out his intention." *Id.* (emphasis added).

In his affidavit, Jenkins states that it was his "desire and intent to become a citizen of the State of Florida and to move [his] family to Fort Lauderdale indefinitely" at the time the Complaint was filed, although he admits his plans fell through and he never moved his family to Florida. (Jenkins Affidavit ("J. Aff."), DE 262-4 ¶ 2). As evidence of his intent, Jenkins states that he was negotiating a deal to work in the Bahamas, to which he intended to commute from Florida. (J. Aff. ¶¶ 3, 4). He states that he had begun negotiations to purchase a house in

6

Florida, had entered into a partnership to own an aircraft in Florida, and had shipped his car to the Bahamas. (J. Aff. ¶¶ 12, 13, 14). However, when his plans to work in the Bahamas fell through, he joined the military and was sent to Afghanistan, and his family remained at their home in Georgia. (J. Aff. ¶ 4).

As evidence of physical presence in Florida, Jenkins states that he lived and worked in Florida a few days a week, "prior to and during the summer of 2011." (J. Aff. ¶ 6). He states that he acquired a Florida telephone number around 2008 or 2009, which he put on his business card. (J. Aff. ¶¶ 7-8). Jenkins also asserts that he and his wife had family in Florida, and that he was the beneficiary of a trailer and a truck, which were registered in Florida. (J. Aff. ¶¶ 5, 9).

As evidence that Jenkins was a citizen of Georgia when the Complaint was filed, Cordell Funding submits various public records, of which the Court takes judicial notice.[5] Two warranty deeds show that Jenkins and his wife purchased a residence in Georgia on August 11, 2000 (the "Georgia Residence"), which they sold on December 12, 2012. (Warranty Deed to Jenkins, DE 263-6; Warranty Deed from Jenkins, DE 263-7). A Cobb County tax statement shows that Jenkins paid property taxes on the Georgia Residence from 2000 to 2012. (Cobb County Tax Statement, DE 263-8). Finally, Jenkins and his wife registered to vote in Georgia on October 1,

---

[5] Rule 201 permits courts to take judicial notice of "a fact that is not subject to reasonable dispute because it[] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Because their accuracy cannot reasonably be questioned, courts may take judicial notice of "matters of public record." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277-78 (11th Cir. 1999). Certificates of voter registration, county tax statements, and recorded warranty deeds are matters of public record that may be judicially noticed. *See, e.g., United States v. 2.50 Acres of Land, more or less, in the Cty. of Dade*, No. 02-20806-CV, 2008 WL 2704227, at *3 (S.D. Fla. July 10, 2008) (taking judicial notice of tax certificates and warranty deeds). Accordingly, the Court grants Cordell Funding's Motion to Take Judicial Notice of a certificate of Jenkins' voter registration, Cobb County tax statements related to Jenkins' property, and two warranty deeds showing the conveyance of Jenkins' property.

2000, listing the Georgia Residence as their registered address, and they are still registered to vote there. (Voter Registration, DE 263-9).

Cordell Funding also points to evidence on the record to show Jenkins was a citizen of Georgia. On December 1, 2011, a process server served the summons and Complaint at the Georgia Residence on Jenkins' daughter, who stated that Jenkins was out of the country on military service, but would return in two months. (Proof of Service, DE 263-11 at 26). Jenkins' daughter told the process server that Jenkins continued to receive mail at the Georgia Residence. (Proof of Service at 26). In addition, in his January 27, 2012 Letter to the Court, Jenkins lists the Georgia Residence as his return address. (Letter to the Court, DE 263-11 at 1).

Based on all of these factors, Cordell Funding has met its burden of showing that Jenkins was a citizen of Georgia, and Jenkins has not proved that he "had carried out his intention to move his domicile to [Florida]." *See Hendry*, 455 F.2d at 956. The only home that Jenkins owned at the time the Complaint was filed was in Georgia, his family was in Georgia, his driver's license was in Georgia, and he paid taxes and was registered to vote in Georgia. Jenkins spent only a few days a week in Florida, working. *See Hendry*, 455 F.2d at 956 (holding that spending most of one's working time in a state is insufficient to establish domicile in that state). Although Jenkins states that he intended to become a citizen of Florida, "statements of intent are entitled to little weight when in conflict with facts." *See Hendry*, 455 F.2d at 956. When Jenkins was served with the Complaint, a few months after it was filed, his family and home remained in Georgia, where he continued to receive mail, and where he intended to return upon completion of his service in Afghanistan. Accordingly, the preponderance of the evidence shows that Jenkins was a citizen of Georgia when the Complaint was filed.

Because Plaintiff was a citizen of Virginia, New Jersey, New York, the Cook Islands, and possibly Florida, and Defendant was a citizen of Georgia when the Complaint was filed, complete diversity exists between the Parties. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that

(1) Cordell Funding's Motion to Take Judicial Notice (DE 264) is **GRANTED.**

(2) The Court has subject matter jurisdiction in this matter. This case is **RETURNED** to the Court of Appeals for further proceedings. The Clerk of Court shall **SEND** a copy of this Order to the Court of Appeals.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this /4 day of March, 2017.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record